**UNITED STATES of America,**
**Appellee,**

v.

**Anthony SOTO, Defendant–Appellant.**

**No. 02–1409.**

United States Court of Appeals, Second Circuit.

March 11, 2003.

---

\* The Honorable Janet C. Hall, United States District Court Judge for the District of Con-

---

Donna R. Newman, New York, NY, for Appellant.

Lawrence Gerschwer, Assistant United States Attorney for the Southern District of New York, New York, NY, for Appellee.

Present: POOLER, B.D. PARKER, Jr., Circuit Judges, and JANET C. HALL, District Judge.\*

**SUMMARY ORDER**

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL

necticut, sitting by designation.

REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 11th day of March two thousand and three.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

Anthony Soto appeals from a judgment of thirty-six months imprisonment imposed on him after his plea of guilty to violating supervised release by using narcotics including heroin and cocaine.

Soto originally pleaded guilty to participation in a narcotics conspiracy. Because he had two prior state felony convictions, he faced a mandatory minimum sentence of life imprisonment. After cooperating with the government, Soto received a sentence of only thirty-six months imprisonment followed by five years of supervised release. Soto was unable to participate in a substance abuse treatment program during this incarceration for reasons beyond his control. Upon his release from prison, Soto again began using drugs. Soto admitted he had violated the terms of his supervised release and was sentenced to twelve months imprisonment and four years supervised release. The district court recommended that Soto be involved in an intensive substance abuse treatment

program known as the 500–hour program. Soto applied for the program and began participation but was unable to finish the program because, fearing for his safety, he asked to be placed in administrative segregation. Soto again relapsed almost as soon as he was released. This time the district court sentenced him to nine months imprisonment followed by thirty-three months supervised release. After release, Soto again used narcotics and failed to participate in required drug treatment.

After this third violation, the probation department requested revocation of Soto's supervised release. In its report to the court, the department stated incorrectly that application of the policy statements contained in Chapter 7 of the Sentencing Guidelines would result in a term of imprisonment of between three and nine months. The applicable guideline actually was eight to fourteen months. U.S.S.G. § 7B1.4. The probation department also reminded the judge that the policy statements were not binding. Based on Soto's multiple violations and the clear link between those violations and his drug addiction, the probation department recommended that the court impose a sentence of thirty-six months imprisonment. The department also recommended that Soto participate in the 500–hour program and noted that "[i]n order ... to be eligible for this program he must receive a minimum thirty-six month sentence."

At sentencing, the court noted that it had received and reviewed the Probation Department's report and that it contained a discussion of the Guidelines' policy statements. The government initially stated, incorrectly, that a thirty-three-month sentence was required because there is "a 24 month waiting period to get into it." However, the government later explained that it was recommending thirty-six months because (1) Soto already had served two

months, which would be applied against his sentence; (2) a certain additional period would be required for Soto to be designated to a facility that had the 500–hour program; (3) Soto would serve six months in a halfway house after completing the program; and (4) after completion of the program, Soto would be eligible for a reduction of up to a year in his sentence. The government stated that "36 months is safe. It makes sure that he would be able to complete the 500–hour program." Defense counsel vigorously contested the factual underpinnings of the government's recommendation. She noted that not everyone was sent to a halfway house; Soto previously had been admitted to a drug treatment program when sentenced to twelve months imprisonment; and any reduction in Soto's sentence might be less than twelve months. The court imposed a sentence of thirty-six months imprisonment.

On appeal, Soto argues that the sentence must be vacated and remanded because the court failed to consider the applicable policy statements, imposed a sentence that was plainly unreasonable in light of the court's goal of ensuring Soto's participation in substance abuse treatment, and relied on misinformation, thus denying Soto due process.

The policy statements concerning revocation of supervised release are not binding on the district court. *United States v. Kingdom (U.S.A.), Inc.*, 157 F.3d 133, 136 (2d Cir.1998). However, the court must consider those statements, and we will vacate and remand for resentencing where it appears that the district court intended to apply a policy statement but misinterpreted it. *Id.* The record in this case clearly reflects the court's knowledge of the guideline range set forth in the probation department's report. Although this range was lower than the actually applicable range, the district court's decision to im-

pose a sentence well in excess of the actual range demonstrates that there is no risk the court would have imposed a lower sentence had it known the correct range. *Cf. id.* (vacating and remanding because district court's remarks made it appear the court intended to impose a sentence within the guidelines range contained in the policy statement but misinterpreted the policy statement).

Nor was Soto's sentence either plainly unreasonable or based on misinformation. The only factual error in the government's argument to the district court was its statement that there was a twenty-four-month waiting period for admission into the 500–hour program. The government later clarified that its calculation of thirty-three to thirty-six months for the completion of the program was based on several factors including the two months Soto had already been incarcerated, the time necessary for Soto to be designated to a facility that offered the program, the time necessary for Soto to complete the program as well as a subsequent half-way house assignment, and a potential reduction of up to twelve months in his sentence for completion of the program. Contrary to Soto's position, the government did not claim that Soto would necessarily receive a twelve-month reduction in his sentence. It is clear from the record as a whole that the government explained how it arrived at its conclusions concerning the appropriate sentence and that, in major part, it offered estimates not firm figures. Thus, the sentence does not rest on misinformation.

The sentence is also reasonable. Although Soto may be able to complete the 500–hour program in less time than the district court calculated, the court reasonably chose to impose the sentence that would give this seriously addicted individual and repeat violator of supervised release the best possibility of completing the program and defeating his addiction. There-

fore, the sentence cannot be seen as plainly unreasonable. *See United States v. Sweeney*, 90 F.3d 55, 57 (2d Cir.1996) (stating that we review district court's sentence for violation of supervised release to determine whether it is "plainly unreasonable").

We previously have granted appellant's motion to file his reply brief nunc pro tunc. We also have directed that the government's supplemental appendix be filed and kept under seal. Defendant's motions are otherwise denied.